**MORLEY MUSIC CO., WB Music Corp., Gerald Marks and Jerry Herman, Plaintiffs,**

v.

**CAFE CONTINENTAL, INC. and Alfred L. Cohen, Defendants.**

No. 91–6019–CIV.

United States District Court, S.D. Florida.

Nov. 4, 1991.

David M. Rogero of Blackwell & Walker, P.A., Miami, Fla., for plaintiffs.

Randall L. Leshin, Ft. Lauderdale, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PAINE, District Judge.

1. The Plaintiffs, as evidenced by copyright registration certificates and assignments, are the owners of the copyrights of the following musical compositions:

| PLAINTIFF | COMPOSITION |
| --- | --- |
| MORLEY MUSIC COMPANY | "After You've Gone" |
| WB MUSIC CORPORATION | "Fools Rush In" |
| GERALD MARKS | "All of Me" |
| JERRY HERMAN | "Hello Dolly" |
| JERRY HERMAN | "Mame" |

2. The Plaintiffs are also members of the American Society of Composers, Authors and Publishers ("ASCAP"), an unincorporated association of more than 48,000 writers and publishers of musical compositions. Each member, including the Plaintiffs in this action, have granted ASCAP the nonexclusive right to license nondramatic public performances of their works.

3. To protect the approximately four million songs in its catalogue, ASCAP has district offices throughout the country that are responsible for contacting and licensing establishments, such as radio and television stations, restaurants and others who desire to lawfully perform its members' musical compositions. Blanket licenses grant said establishments the right to perform any and all of the works owned by the members or affiliates as often as desire for a stated term.

4. The Defendant, CAFE CONTINENTAL, INC. ("CAFE"), is a Florida corporation which owns and operates Cafe Continental, a dining and entertainment establishment in Fort Lauderdale, Florida. Musical compositions have been publicly performed for the patrons of Cafe Continental since 1986.

5. ALFRED L. COHEN ("COHEN") is president and sole shareholder of CAFE, as well as Cafe Continental's manager and operator of day to day affairs. His responsibilities include, *inter alia*, the engagement of musical acts to perform at Cafe Continental.

6. On November 13, 1986, a representative from ASCAP's Miami District Office visited Cafe Continental and found that musical compositions were being performed there by mechanical means.

7. Between November 18, 1986 and June 22, 1990, the parties exchanged correspondence and, on five to eight occasions, personally discussed federal copyright law and the availability of a blanket license to permit the public performance of musical works in the ASCAP repertoire. Over this period of time, ASCAP submitted, on eight to ten opportunities, a proposed license agreement for approval.

8. Apparently dissatisfied with the prolonged nature of "discussions," ASCAP engaged George and Ruth Bolotin to conduct a "musical inspection" of Cafe Continental.

A "musical inspection" involves visiting an establishment suspected of playing of a song copyrighted by an ASCAP member and collecting information on: (a) the physical arrangement of the business; (b) the music system in use; (c) a description of live performers; and (d) the music performed.

9. The testimony of Ruth Bolotin, which the court finds credible, indicates that on October 14, 1990, the following songs were publicly performed, without the Plaintiffs' permission, by musicians at Cafe Continental:

| TIME | COMPOSITION |
| --- | --- |
| 7:36 p.m. | "After You've Gone" |
| 7:44 p.m. | "Fools Rush In" |
| 7:56 p.m. | "Hello Dolly" |
| 7:59 p.m. | "Mame" |
| 8:08 p.m. | "All of Me" |

10. On January 10, 1991, the Plaintiffs commenced this action, alleging copyright infringement on the part of the Defendants, seeking statutory damages, costs and attorneys' fees, as well as a permanent injunction prohibiting further unauthorized performances of their copyrighted works.

11. Thereafter, ASCAP hired George and Ruth Bolotin to conduct a second "musical inspection" of Cafe Continental. The testimony of Ruth Bolotin indicates that on April 6, 1991, the following musical compositions were publicly performed, without the Plaintiffs' permission, by musicians at Cafe Continental:

| TIME | COMPOSITION |
| --- | --- |
| 7:55 p.m. | "Mame" |
| 7:57 p.m. | "Hello Dolly" |

12. On August 30, 1991, CAFE filed for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code, because of the "potentially large judgment ... and massive attorneys' fees" which could be awarded in this litigation. The bankruptcy proceedings involving CAFE operates as a stay of this action as to the corporation, pursuant to 11 U.S.C. § 362, but does not, in light of the facts and merits of this case, bar suit against the non-debtor, COHEN. *In re Anje Jewelry Co., Inc.,* 47 B.R. 485 (Bankr. E.D.N.Y.1983); *In re Trails End Lodge, Inc.,* 45 B.R. 597 (Bankr.D.R.I.1984).

### CONCLUSIONS OF LAW

13. In enumerating the powers vested in the federal government, Article I, Section 8 of the United States Constitution, grants Congress the power:

> [t]o promote the progress of science and useful arts, by securing for limited time to authors and inventors the exclusive right to their respective writings and discoveries.

It is from this clause that the federal authority to enact copyright and patent legislation is derived. 1 Melville B. Nimmer, *Nimmer on Copyright* § 1.02 at 1–30 (1991).

14. Acting on that authority, the very first Congress enacted a federal copyright protection statute in 1790. Act of May 31, 1790, chap. 15, 1 Stat 124. That statute, in its current form, 17 U.S.C. § 101 *et seq.,* grants the owner of the copyright of a musical work the *exclusive* right to perform their composition publicly and to authorize the public performance of their work. *See* 17 U.S.C. § 106.

15. Copyright owners may, however, assign these rights to third parties, such as ASCAP, who act as intermediaries between the copyright owners and persons and businesses interested in performing the works publicly. *See* 17 U.S.C. § 201.

 16. To prove a claim of copyright infringement, the Plaintiffs must show: (1) the originality and authorship of the compositions involved; (2) compliance with the formalities of the Copyright Act to secure a valid copyright; (3) a proprietary right in and to the copyrights at issue; and (4) the Defendant's public performance of their works, not authorized by the Plaintiffs' or their representatives. *Broadcast Music v. Palmer,* 672 F.Supp. 531, 533 (D.Me.1987); *Van Halen Music v. Palmer,* 626 F.Supp. 1163, 1165 (W.D.Ark.1986); *LaSalle Music Publishers, Inc. v. Highfill,* 622 F.Supp. 168, 168–69 (W.D.Mo.1985).

17. A *prima facie* case as to the first three criteria has been established by the Plaintiffs' submission of copies of the works' copyright registration certificates and assignments. *Van Halen,* 626 F.Supp. at 1165. *See Fourth Floor Music, Inc. v. Der Place, Inc.,* 572 F.Supp. 41, 43 (D.Neb. 1983). *See* 17 U.S.C. § 410(c).

 18. As to the final factor, any person who violates the exclusive rights of a copyright owner is an infringer of that copyright and an individual may be held liable for copyright infringement even if they did not perform the musical composition. *See Southern Bell Tel. & Tel. v. Assoc. Telephone Dir.,* 756 F.2d 801, 811 (11th Cir.1985); *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971).

 19. Liability may also extend vicariously to corporate officers who have a dominant influence in a corporation and who have the capacity to control the acts of that corporation:

> [a]n individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement.

*Southern Bell,* 756 F.2d at 811 (quoting *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 517 F.Supp. 900, 904 (S.D.N.Y.1981)). *See Nick–O–Val Music Co., Inc. v. P.O.S. Radio, Inc.,* 656 F.Supp. 826, 828 (M.D.Fla.1987); *Boz Scaggs Music v. KND Corp.,* 491 F.Supp. 908, 913–14 (D.Conn.1980).

20. Applying this standard to the findings of fact, the undersigned concludes

that COHEN is liable for copyright infringement.

21. A Plaintiff is entitled to a permanent injunction in a copyright action when liability has been established and where there is a threat of continuing violations. *Universal City Studios, Inc. v. Sony Corporation of America*, 659 F.2d 963, 976 (9th Cir.1981). Pursuant to 17 U.S.C. § 502(a), this court may grant "temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." Because the Defendant's conduct demonstrates his tendency to ignore both ASCAP and the copyright owner's rights, COHEN is permanently enjoined from performing the infringed compositions, unless and until he obtains the appropriate license to publicly perform those works.

22. Under 17 U.S.C. § 504(a), the Plaintiffs may also recover either actual damages and profits or, as elected in this instance, statutory damages. Section 504(c) provides that:

> the copyright owner may elect, at any time before final judgment is rendered, to recover instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, in a sum not less than $500 or more than $20,000 as the court considers just.

23. Factors which are to be considered in determining the measure of statutory damages are: (1) the expenses saved and profits reaped by the Defendant in connection with the infringements; (2) the revenues lost by the Plaintiffs as a result of the Defendant's conduct; and (3) the infringers' state of mind, that is, whether willful, knowing, or merely innocent. *Nick–O–Val*, 656 F.Supp. at 829; *Boz Scaggs*, 491 F.Supp. at 914. An award of "substantial damages, well in excess of appropriate licensing fees," is appropriate where the Defendant "repeatedly violates copyright laws despite actual knowledge of their licensing requirements." *Coleman v. Payne*, 698 F.Supp. 704, 708 (W.D.Mich. 1988).

24. As stated previously, from November 18, 1986 to June 22, 1990, the parties exchanged correspondence and had repeated discussions of federal copyright law and the availability of an ASCAP blanket license. In order to protect their copyright interests, the Plaintiffs were forced to seek relief from the undersigned. Despite the filing of this action, the Defendant remains unlicensed, while continuing the public performance of songs from the ASCAP catalogue. Taking this into consideration, and the fact that from October 1, 1986 until December 31, 1991, COHEN will have avoided a total of $2,582.91 in license fees, the court finds that statutory damages in the amount of $1,500 per infringement appropriate.

In view of all the foregoing, it is hereby ORDERED and ADJUDGED that Judgment shall be entered in accordance with these Findings of Fact and Conclusions of Law.

DONE and ORDERED.